THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.

UNITED STATES OF AMERICA,

Plaintiff,

v.

Star Mine Operations, LLC,

Defendant.

---

# PLEA AGREEMENT

---

The United States of America, by and through Robert C. Troyer, Acting United States Attorney for the District of Colorado, J. Chris Larson and Peter Hautzinger, Assistant United States Attorneys, and the defendant, Star Mine Operations LLC, by its duly authorized representative Rory Williams, and by counsel Frederic Winocur and Peter Gould, submit the following Plea Agreement pursuant to D.C. COLO. LCr.R. 11.1.

## I. AGREEMENT

Defendant Star Mine Operations LLC agrees to plead guilty to Count One of the Information charging a violation of Title 30 U.S.C. § 820(f), making false statements, representations or certifications.

The defendant Star Mine Operations LLC agrees to execute the documents and pleadings necessary to effect this plea agreement, including but not limited to the execution of minutes authorizing this plea agreement, and the authorization for a representative or representatives to represent Star Mine Operations LLC at sentencing.



COURT EXHIBIT
1

In particular, Star Mine Operations LLC agrees to file a notice of disposition upon the filing of the Information in this matter, which will inform the Court of this agreement.

The defendant agrees, to the extent it has not already done so, to identify all individuals involved in, or responsible for, the violation charged in Count One and provide to the government all facts relating to that violation.

The defendant understands that any recommendation by the government to the Court is merely a recommendation and the Court will exercise its discretion, within the law, in determining a just sentence.

The defendant is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless the sentence imposed is above the maximum penalty provided in the statute of conviction. Except as provided above, the defendant also knowingly and voluntarily waives the right to appeal the manner in which the sentence is determined on grounds set forth in 18 U.S.C. § 3742 or any ground whatever. The defendant also knowingly and voluntarily waives its right to challenge this prosecution, conviction, or sentence and/or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255. This waiver provision, however, will not prevent the defendant from seeking relief otherwise available if: (1) there is an explicitly retroactive change in the applicable guidelines or sentencing statute, (2) there is a claim that the defendant was denied the effective assistance of counsel, or (3)

there is a claim of prosecutorial misconduct. Additionally, if the government appeals the sentence imposed by the Court, the defendant is released from this waiver provision.

As part of this disposition, the parties agree to recommend a sentence of probation for a period of five years, which upon violation may either be extended or revoked subject to resentencing. The parties further agree to the following specific terms:

(A) **Restitution**: the defendant will tender $1.333 million dollars as restitution in this matter by making four payments over time. The defendant will tender these payments as follows: (1) $333,333.34 will be paid at the time of sentencing, (2) 333,333.33 will be paid on or before December 31, 2017, (3) 333,333.33 will be paid on or before December 31, 2018, and (4) 333,000.00 will be paid on or before December 31, 2019.

a. Payments will be disbursed on a *pro rata* basis to the following:

| Individual[1] | Relationship to Decedent |
|---|---|
| i. Martha Cappanno | Spouse of Nick Cappanno |
| ii. Br.C. | Minor Child of Nick Cappanno |
| iii. Ba.C. | Minor Child of Nick Cappanno |
| iv. Judith A. Williams | Spouse of Rick Williams |

b. With respect to the payments to be made to the minor children of Nick Cappanno (a)(ii – iii), Star Mine Operations LLC will tender payments to Br.C. and Ba.C., by placing funds in a structured annuity trust to benefit the health, welfare and education of Br.C. and Ba.C, which will be

[1] For purposes of this agreement, pursuant to 18 U.S.C. § 3663(a)(3), the parties stipulate and agree that these four individuals are eligible for restitution.

established in consultation with Martha Cappanno or her authorized representative.

c. To secure the restitution payments to be made over time, as described above, the defendant will obtain a bond and will tender that bond at the time of sentencing.

d. Further, the defendant agrees that it will ensure that this plea agreement and the contemplated restitution obligation will be binding on any successor corporation, if any, and that the defendant will not dissipate or otherwise transfer assets to avoid the obligations in this agreement.

(B) **Fine and Penalty**: Star Mine Operations LLC agrees to pay $300,000 in fines and penalties to MSHA, as a settlement of administrative fines and penalties assessed against Star Mine Operations, LLC, in the matter of the *Secretary of Labor Mine Safety and Health Administration (MSHA) v. Star Mine Operations, LLC*, currently pending before the Federal Mine Safety and Health Review Commission. *See* Administrative Agreement Attached, Exhibit A. The parties recommend that this Court consider the fine to be paid as part of the administrative settlement as satisfying the requirement of a fine to be assessed in this matter.

(C) **Injunction:** Star Mine Operations LLC agrees to be enjoined from participating in the mining industry, pursuant to the terms of a settlement of the administrative proceeding identified in paragraph (B), above.[2]

[2] As part of the resolution of the administrative proceeding, it is also understood by the parties, although not made binding as part of this plea agreement, that the Star Mine Operations, LLC co-owner and mine manager, Rory Williams, will have an obligation to pay a civil fine and will be subject to an administrative injunction.

## II. STATUTORY PENALTIES

The maximum statutory penalty for a violation of Title 30 U.S.C. § 820(f) is a term of imprisonment of not more than five years, not more than a $500,000 fine or both, three years of supervised release, and a $400 special assessment.

## III. ELEMENTS

The elements of the offense, a violation of 30 U.S.C. § 820(f), are as follows:

***First***: the defendant made a statement, representation, or certification;

***Second***: the statement, representation, or certification was false;

***Third***: the statement, representation, or certification was material;

***Fourth:*** the defendant made the statement, representation, or certification knowingly; and

***Fifth***: the statement, representation, or certification was made in a record required to be maintained by the Mine Safety Act.

## IV. STIPULATION OF FACTUAL BASIS AND FACTS RELEVANT FOR SENTENCING

The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, consider the guidelines and policy statements in Chapter 8 of the *United States Sentencing Commission Guidelines Manual*, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below that are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts, which do not contradict facts to which the parties have stipulated and that are relevant to the Court's guideline computations, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

**FACTUAL STIPULATION**

The parties agree as follows:

On November 17, 2013, Nicholas K. Cappanno and Rick L. Williams died of carbon monoxide poisoning in an unventilated portion of the Revenue-Virginius Mine (MSHA ID 05-03528) (also known as the Revenue Mine or ~~Star Mine~~), located in the mountains approximately seven miles outside of Ouray, Colorado. The deaths were caused by gases from an exceptionally large detonation of explosives set off by these and other individuals the previous day.[3] Both Messrs. Cappanno and Williams were employees of Star Mine Operations LLC. Mr. Cappanno had been employed for only five weeks, and was a nipper (or entry level miner), while Mr. Williams was a shift supervisor with more than three decades of mining experience.

At all relevant times, Star Mine Operations LLC was the operator of the Revenue-Virginius, which was metal/non-metal mine subject to the mandatory safety standards in 30 C.F.R., Part 57, including the requirement that a plan of mine ventilation be set out in written form and submitted to the District Manager of the Mine Safety and Health Administration (MSHA) for review and comments upon written request, pursuant to 30 C.F.R. § 57.8520.

[3] It is the defendant's position that this detonation was unauthorized by mine management.

In the months just prior to the incident that killed Messrs. Cappanno and Williams, Star Mine Operations LLC informed the Mine Safety and Health Administration that the area where both men would die—an area known as the Monogahela Drift N.W. —had abundant quantities of fresh air. This and other representations were false. At the time of the incident, there was no ventilation in the Monogahela Drift, N.W., and that area should have been barricaded from entry, as required in regulations that applied to the Revenue-Virginius Mine. 30 C.F.R. § 57.8528.

In January and again in August, 2013, Star Mine Operations LLC represented that:

> We currently have two main working areas in the mine, the Yellow Rose Drift S.E. and the main Revenue Tunnel extending into the Monogahela Drift N.W. Both of these working areas are being supplied abundant quantities of fresh air by the main fans as shown on the mine map. As we work in additional areas that are out of the main air flow we will use booster (auxiliary) fans and flexible vent bag to provide adequate air to those areas.

On September 10, 2013, the District Manager for the Rocky Mountain District of the Mine Safety Health Administration found deficiencies with the ventilation plan and requested that Star Mine Operations LLC provide a corrected ventilation plan to the District Office. Among other things, the District Manager requested CFM (cubic foot per minute) air readings at exhaust locations, asked whether certain areas other than the Monogahela were ventilated, and if not, whether unventilated areas were barricaded as required per 30 C.F.R. § 57.8528 (requiring that "[u]nventilated areas shall be sealed, or barricaded and posted against entry").

The District Manager specifically identified that within the Revenue-Virginius Mine there were areas known as the Anglo Saxon Crosscut and the Terrible Drift that

did not have ventilation as indicated on the ventilation map. He therefore asked questions about these areas. Star Mine Operations LLC responded on or about September 26, 2013, by filing an updated ventilation plan and map. In response to questions about ventilation, Star Mine Operations LLC revised its ventilation map to clearly indicate that more than five unventilated portions of the mine were barricaded from entrance. Specifically, the revised map indicated the following areas were "BARRICADED (NO ENTRANCE)": the Anglo Saxon Crosscut, the Terrible Drift, the Cumberland Drift N.W., the Atlas Drift S.W., the Wheel of Fortune, and several other unnamed dead-end areas. Barricading these unventilated areas was required per regulation. *See* 30 C.F.R. § 57.8528 (requiring that "[u]nventilated areas shall be sealed, or barricaded and posted against entry").

Star Mine Operations LLC, however, made no similar representations about the unventilated portion of the Monogahela Drift, N.W. Instead, the updated ventilation plan and map again indicated that the Monogahela Drift, N.W. (1) was being supplied abundant quantities of fresh air in working areas, (2) that 9500 CFM of fresh air was flowing into the Monogahela Drift, N.W., (3) that the fresh air flowing into the Monogahela Drift N.W. was exhausting to the surface through old workings identified in three separate points along the Monogahela Drift, and (4) that auxiliary fans and flexible vent bags would provide adequate air flow in additional areas out of the main air flow.[4] Each of these statements was false. At the time of the misrepresentations, Star Mine

---

[4] Safety Manager Danny Woodruff signed the September 26, 2013, letter that forwarded the updated ventilation plan and map to the MSHA District Manager. The ventilation map was prepared by both Martin Chenoweth, engineer, and John R. Trujillo, project manager.

Operations LLC knew that none of these conditions then existed in the Monogahela Drift, N.W.

The actual conditions in the Monogahela Drift, N.W. were far different than what Star Mine Operations LLC had represented. While the mine map showed that fresh air was flowing into the Monogahela Drift and exhausting to the surface through old workings, in fact no such exit exhaust points existed. Instead of 9500 CFM of fresh air flowing into the Monogahela Drift, a nearly undetectable amount of air was actually moving *out* of the Monogahela Drift, in the *other direction*. While there was some section of vent bag hung in the Monogahela by November 2013, there were no auxiliary fans providing air flow. Abundant quantities of fresh air were not found in the Monogahela Drift, N.W. In sum, there was no fresh air ventilation into the Monogahela Drift, N.W., which was located about a mile from the entrance of the mine.

The MSHA District Manager reviewed the updated Ventilation Plan filed by Star Mine Operations LLC, and the District Manager advised that the plan was only acceptable while the mine was in rehab and development mode—not production mode. Notably, "[p]rior to production, an updated ventilation plan with all required information must be submitted."

Nevertheless, by this time, work was underway in the Monogahela. A month earlier, on August 29, 2013, Rory Williams, the co-owner and manager of the mine, had directed that a rig and drill be moved to the Virginius/Monogahela for the remainder of the year. Miners were then directed to work in the Monogahela Drift, and in particular to work in an area known as the Chinaman Chute, or the 2-3-1 raise. The purpose was to

attempt to extract ore from a narrow vein, which initially was 6 to 8 inches wide, but was developed to be 18 inches wide by late October.

At this same time, in 2013, Star Mine Operations LLC was in economic difficulty. Years earlier, in 2011, Jim Williams and Rory Williams, through a corporate entity, had purchased the rights to the Revenue-Virginius. But after two years, the mine had not yet begun to make any money, despite years of substantial investment. By September 10, 2013, in an email to his father, Rory Williams announced that "we need to chop our costs on all items not required." He wrote, "we can[']t wait even a day longer to enact change." From his office in Denver, Rory Williams required employees to obtain his personal approval for a wide array of costs—from rags, to brooms to the number of file folders bought for the office.

On September 26, 2013, Rory Williams retained a Swiss consultant to market the mine, in an attempt to sell "the asset for cash or cash/stock combination." Marketing materials were subsequently generated, and at least one draft report sent to his father in October included reference to development in the Monogahela. On October 21, 2013, Rory Williams reported the progress of this work to his father, Jim Williams, in an email:

> We have completed another round up on the monogahela vein (~25 feet now?) and I think it will be our last for now. The vein has swelled to maybe 18" average and still carries sulfides. We will now conduct horizontal development. Assuming the horizontal directions still maintain width and grade then we will develop that stope.

The next day, Jim Williams received another update from the underground mine manager, Jack Clark, noting that in the Monogahela, "ventilation [is] a concern need GFI switch gear and fan." Nevertheless, no GFI switch or fan was installed.

Daily reports on mine activity were sent via email to mine management. Nearly a dozen daily reports starting in October 2013 referenced ventilation issues in the Monogahela Drift. Despite active ongoing work in the Monogahela Drift, ventilation problems were not addressed. And no revised ventilation plan was submitted to MSHA.

Instead, workers were asked to blast at the end of their shift and then leave the Monogahela Drift. The time between shifts would then allow for gases caused by blasting to slowly dissipate. By early November, the underground mine manager, Jack Clark, ordered that work in the Monogahela temporarily stop. Despite being notified, the area was not sealed, or barricaded and posted against entry.

On November 16, 2013, an exceptionally large detonation of explosives occurred at the far end of the Monogahela Drift, N.W. The following day, Nick Cappanno and Rick Williams were both overcome from the poisonous gas and perished. The details of this incident are included in a report of the MSHA investigation, which can be accessed at: http://arlweb.msha.gov/FATALS/metal/2013/final-reports/final-m13-1617.pdf

As part of that investigation, MSHA conducted a detailed survey of the conditions in and around the Monogahela Drift, N.W. The MSHA accident investigation concluded that Star Mine knowingly submitted false statements in its September 2013 ventilation plan, and these false statements were one of several root causes for the fatalities on November of 2013. In particular, MSHA found that Star Mine Operations LLC:

> *provided the map for the ventilation plan that showed the direction of air flows in the Monogahela and Virginius areas knowing that the ventilation shown on the map was not physically possible; constructed the ventilation plan and map with other false information and without the inclusion of required information such as the location of connecting and adjacent mine openings; submitted the false information to*

> *MSHA; distributed the incorrect information to miners through the maps; set out the ventilation plan and failed to ventilate the working areas of the Monogahela drift as per the plan, despite miners' requests; failed to provide ventilation to the working areas prior to production and blasting work being conducted. Further, the mine's professional engineer signed the maps.*

Order No. 8769614, issued October, 2014.

## VI. ADVISORY GUIDELINE COMPUTATION AND 3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the advisory guidelines issued by the United States Sentencing Commission. As the defendant is a corporation, the applicable advisory guidelines are found in Chapter 8. U.S.S.G. § 8A1.1. To aid the Court, the parties set forth the following application of these guidelines and policy statements. To the extent the parties disagree about the advisory guideline application in this matter, the recitation below identifies the matters that are in dispute.

A. Pursuant to § 8B1.1, the court should enter a restitution order for the full amount of victims' losses or impose a term of probation with a condition requiring restitution for the full amount of victims' losses.

B. Pursuant to § 8B1.2, as a condition of probation, the Court may impose a remedial order requiring the defendant to remedy the harm caused by the offense and to eliminate the risk that the offense will cause future harm. If the magnitude of the expected future harm can be reasonably estimated, the court may require the organization to create a trust fund sufficient to address that expected harm.

C. Pursuant to § 8B1.3, the court may order community service as a condition of probation where such community service is reasonably designed to repair the harm caused by the offense.

D. Fine calculation: The parties provide the following minimum and maximum fine calculation, noting disagreements where they exist. Pursuant to §§ 8C2.6 & 8C2.7, the minimum fine is $180,000 (1.2 X $150,000) and the maximum fine is $360,000 (2.4 x $150,000), which is calculated after identifying the base fine and the culpability score, as follows:

a. **Base fine:** Pursuant to § 8C1.1, the defendant did not operate primarily for a criminal purpose, and therefore Subpart 2 (Determining the Fine – Other Organizations) applies, as follows:

i. Pursuant to § 8C2.3, the fine is calculated by using the Chapter Two guideline to determine the base offense level.

ii. Pursuant to § 2X5.1, the most analogous offense for 30 U.S.C. § 320(f), is an offense under 18 U.S.C. § 1001. Applying that guideline, § 2B1.1, the base offense level is 6.

iii. Pursuant to § 2B1.1(b)(15), the offense level is increased to level 14 because the offense involved the conscious or reckless risk of death or serious bodily injury.[5]

iv. The adjusted offense level therefore would be 14.

v. Pursuant to § 8C2.4, the base fine is $150,000.

b. **Culpability score:** Pursuant to § 8C2.5 the culpability score is calculated as follows:

i. The base culpability score is 5.

ii. Pursuant to § 8C2.5(b)(3), **add 3 points** because the organization had 50 or more employees and an individual within substantial authority personnel participated in, condoned, or was willfully ignorant of the offense.

iii. There are no other enhancements to the culpability score pursuant to § 8C2.5(c)-(e).

iv. Star Mine Operations did not have an effective compliance and ethics program at the time of the offense and is therefore not

[5] The defendant disagrees that this enhancement applies and instead argues that the offense did not involve the conscious or reckless risk of death or serious bodily injury.

eligible any reduction in the culpability score pursuant to § 8B2.5(f).[6]

v. Pursuant to § 8C2.5(g)(2), the culpability score is **reduced by 2 points** because the organization cooperated in the investigation and demonstrated recognition and affirmative acceptance of responsibility.

vi. The adjusted culpability score is 6.

E. Pursuant to § 8C2.8, the Court may assess a fine within the minimum and maximum range, as identified in paragraph (D), above. The parties recommend that the Court consider the $300,000 fine that will be paid by the Defendant in the above referenced administrative matter to satisfy the requirement of a fine in this case.

The parties also note that pursuant to § 8C4.8, a fine may not be appropriate where members or beneficiaries of the organization are direct victims, and where imposing a fine upon the organization may increase the burden on the victims of the offense without achieving a deterrent effect. Hence, the payment of an additional amount in fine may not be appropriate in this case, as that could interfere with the Defendant's ability to pay restitution.

F. Pursuant to §§ 8D1.1(a)(1) & 8D1.3(b), the Court should order a term of probation where necessary to secure payment of restitution.

G. Pursuant to § 8E1.1, a special assessment of $400 must be imposed.

The parties understand that the Court is free, upon consideration and proper application of all Section 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion up to and including the maximum penalties provided by law regardless of either party's position on any Section 3553 factor.

[6] The defendant believes that Star Mine Operations did have an effective compliance and ethics program in place at the time of the offense and is therefore eligible for a reduction in the culpability score.

## VII. ENTIRE AGREEMENT

In addition to this plea agreement, there is an agreement that addresses the administrative proceeding, as described in § I(B), above. *See* Attachment A. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date: 11/28/16 ______________________
Star Mine Operations, LLC

Date: 11/28/16 ______________________
Fredric M. Winocur
Attorney for Defendant

Date: 11/28/16 ______________________
Peter Gould
Attorney for Defendant

Date: 11/28/16 ______________________
J. Chris Larson
Assistant United States Attorney

Date: 11/28/16 ______________________
Peter Hautzinger
Assistant United States Attorney

**Exhibit A**

Administrative Agreement

**The Honorable Richard W. Manning**

**UNITED STATES OF AMERICA**
**FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION OFFICE OF ADMINISTRATIVE LAW JUDGES**

| | |
|---|---|
| STAR MINE OPERATIONS, LLC,<br><br>Contestant,<br><br>v.<br><br>SECRETARY OF LABOR,<br>MINE SAFETY AND HEALTH<br>ADMINISTRATION (MSHA)<br><br>Respondent. | CONTEST PROCEEDING<br><br>Docket No. WEST 2015-592-RM<br>Order No. 8754779, 04/01/2014<br><br>Revenue Mine<br>Mine ID 05-03528 |
| SECRETARY OF LABOR,<br>MINE SAFETY AND HEALTH<br>ADMINISTRATION (MSHA),<br><br>Petitioner,<br><br>v.<br><br>STAR MINE OPERATIONS, LLC,<br><br>Respondent.<br><br>and<br><br>SECRETARY OF LABOR,<br>MINE SAFETY AND HEALTH<br>ADMINISTRATION (MSHA)<br><br>*Petitioner*<br><br>v. | CIVIL PENALTY PROCEEDINGS<br><br>Docket No. WEST 2014-0994-M<br>MSHA Case No. 000359228<br><br>Docket No. WEST 2014-0995-M<br>MSHA Case No. 000359228<br><br>Docket No. WEST 2015-0023-M<br>MSHA Case No. 000363546<br><br>Docket No. WEST 2015-0024-M<br>MSHA Case No. 000360911<br><br>Docket No. WEST 2015-0025-M<br>MSHA Case No. 000360911<br><br>Docket No. WEST 2015-0030-M<br>MSHA Case No. 000361952<br><br>Docket No. WEST 2015-0031-M<br>MSHA Case No. 000361952<br><br>Docket No. WEST 2015-0037-M<br>MSHA Case No. 000363546 |

| | | |
|---|---|---|
| | ) | |
| RORY WILLIAMS, agent of Star Mine Operations, LLC, | ) | Docket No. WEST 2015-0038-M |
| | ) | MSHA Case No. 000363546 |
| | ) | |
| Respondent. | ) | Docket No. WEST 2015-0098-M |
| | ) | MSHA Case No. 000365154 |
| | ) | |
| | ) | Docket No. WEST 2015-0127-M |
| | ) | MSHA Case No. 000365446 |
| | ) | |
| | ) | Docket No. WEST 2015-0128-M |
| | ) | MSHA Case No. 0003654 |
| | ) | Docket No. WEST 2015-0304-M |
| | ) | MSHA Case No. 000369866 |
| | ) | |
| | ) | Docket No. WEST 2015-0305-M |
| | ) | MSHA Case No. 000369866 |
| | ) | |
| | ) | Docket No. WEST 2015-0306-M |
| | ) | MSHA Case No. 000369866 |
| | ) | |
| | ) | Docket No. WEST 2015-0370-M |
| | ) | MSHA Case No. 000372806 |
| | ) | |
| | ) | Docket No. WEST 2015-0440-M |
| | ) | MSHA Case No. 000375046 |
| | ) | |
| | ) | Docket No. WEST 2015-0462-M |
| | ) | MSHA Case No. 000376084 |
| | ) | |
| | ) | Docket No. WEST 2015-0547-M |
| | ) | MSHA Case No. 000378328 |
| | ) | |
| | ) | Docket No. WEST 2015-0596-M |
| | ) | MSHA Case No. 000379026 |
| | ) | |
| | ) | Docket No. WEST 2015-0670-M |
| | ) | MSHA Case No. 000381766 |
| | ) | |
| | ) | Docket No. WEST 2017-0093-M |
| | ) | MSHA Case No. 00423306A |
| | ) | |
| | ) | Mine: Revenue Mine |
| | ) | Mine ID: 0503528 |

## JOINT MOTION TO APPROVE SETTLEMENT AND ORDER PAYMENT

Pursuant to Section 110(k) of the Federal Mine Safety and Health Act of 1977 ("Mine Act") and Commission Procedural Rule 31, the Secretary of Labor (the "Secretary"), Star Mine Operations, LLC ("Star"), and Rory Williams move the Administrative Law Judge to approve the settlement agreement herein ("Settlement Agreement") reached by the parties and to order Respondents to pay civil penalties. In support of this motion, the Secretary states:

### INTRODUCTION

1. Beginning in 2011, Star was the operator of the Revenue Mine, an underground silver mine, located in Ouray County, Colorado.

2. The dockets in the above-captioned matter include 172 citations and orders (collectively the "Issuances")[1] issued with respect to conditions and events taking place in the Revenue Mine between the period of November 17, 2013, and October 1, 2014 (the "Issuance Period"). Docket WEST 2017-0093-M includes a proposed penalty against Star's Manager, Rory Williams, pursuant to Section 110(c) of the Mine Act.

3. In May 2014, Star and other entities with ownership interests in the Revenue Mine, contracted with Fortune Revenue Silver Mines, Inc. ("Fortune"), to sell Fortune all of the assets related to the Revenue Mine operations and to transfer operation responsibility therefor to Fortune. The transaction closed effective October 1, 2014.

4. MSHA investigated two separate accidents that occurred at the Revenue Mine on November 17, 2013, and August 29, 2014. MSHA issued 104(d) orders alleging violations of the

[1] Proposed penalties were issued for 171 of the Issuances. Pursuant to the Court's January 7, 2015 order, WEST 2014-592-RM, which includes 107(a) Order 8754779, was consolidated with WEST 2015-0024-M for purposes of hearing. There is no corresponding penalty for order 8754779.

citations for alleged conditions and events observed and/or discovered during these investigations and separate regular inspections. MSHA also later issued a proposed Section 110(c) penalty against Rory Williams.

5. The Issuances and the Section 110(c) charge include all charging documents MSHA served on Star for alleged violations occurring during the Issuance Period. MSHA assessed civil penalties with respect to the Issuances in the aggregate sum of $2,010,614, and $10,000 with respect to the Section 110(c) charge.

6. On June 23, 2015, pursuant to the request of the Secretary and the United States Attorney's Office for the District of Colorado ("USAO"), the Court stayed these proceedings pending an investigation of Star relating to alleged criminal violations that occurred at the Revenue Mine during the Issuance Period.

SETTLEMENT AGREEMENT

7. Pursuant to Respondents' request, representatives for the Secretary, Star, Rory Williams and the USAO discussed an overall resolution to these civil proceedings and the pending criminal matters. In this context, the Secretary, Star, and Rory Williams have discussed the alleged violations in these dockets and MSHA's proposed penalties, and seek to settle the Issuances and the Section 110(c) penalty as follows:[2] Star will accept all Issuances as written. Star, furthermore, acknowledges that since the asset sale to Fortune closed, it has not directly or indirectly participated in the mining business in the United States, and it agrees to be permanently barred from the mining business in the United States. Star's Managers, Rory Williams and James W. Williams, Jr., agree that they will not, directly or indirectly, actively participate in or manage, or hold any controlling interest in any mining business or operation in

[2] As explained in Paragraphs 8 through 10, the settlement terms and reasons therefore are stated in more detail in Paragraphs 11 through 21.

the United States on a permanent basis. The Secretary has agreed to modify the assessed penalties with respect to the Issuances as set forth in **Exhibit A**, which reduces the aggregate proposed penalty amount for the Issuances to the sum of $300,000.

8. In reaching this settlement, the Secretary has evaluated the value of the compromise, the likelihood of obtaining a still better settlement, the prospects of coming out better, or worse, after a full trial, and the resources that would need to be expended in the attempt. The Secretary has determined that the public interest and the effective enforcement and deterrent purposes of the Mine Act are best served by settling as indicated above.

9. Consistent with the position the Secretary has taken before the Commission in *The American Coal Company*, LAKE 2011-13, the Secretary believes that the pleadings in this case and the above summary give the Commission an adequate basis for exercising its authority to review and approve the Secretary's settlement under Section 110(k) of the Mine Act, 30 U.S.C. § 820(k).

10. In the alternative, recognizing that the questions presented in *The American Coal Company*, LAKE 2011-13, have not yet been resolved by a Court of Appeals, and recognizing that in the interim, Commission administrative law judges are bound by Commission Procedural Rule 31 and *Black Beauty Coal Co.*, 34 FMSRHC 1856 (2012), the Secretary requests in the alternative that the administrative law judge approve the parties' Settlement Agreement as appropriate under the Mine Act for the reasons included in Paragraphs 11 through 21 herein.

11. With respect to Section 110(c) penalties assessed against Rory Williams, the Secretary alleges that Rory Williams knew or had reason to know of the existence of the associated violative conditions described in Order No. 8769608. Rory Williams agrees to pay the $10,000 penalty.

12. In its Answers and other pleadings, Star alleges that it is insolvent because it has no assets and all proceeds from the sale of the Revenue Mine to Fortune were used to pay creditors. In support of this allegation, Star has provided the Secretary with information regarding its financial condition before and after the Issuance Period, including information relating to the asset sale to Fortune.

13. Star represents that it sold its assets and discontinued business operations for business reasons rather than to avoid paying the proposed assessed penalties. The Secretary has not found evidence to the contrary.

14. Star represents that since the asset sale to Fortune closed on October 1, 2014, Star has not participated in the mining business in the United States, and agrees that it will be permanently barred from participating in the mining business in the United States.

15. In determining a proper civil penalty to be imposed, an Administrative Law Judge is bound by the Section 110(i) criteria as well as the deterrent purpose of the Mine Act's penalty assessment scheme. Ember Contracting Corp., 33 FMSHRC 2742, 2751 (Paez 2011) (citing Sellersburg Stone Co., 5 FMSHRC 287, 294 (March 1983)). The purpose of a civil penalty is to induce the operator of the mine to comply with the Mine Act. Id. (quoting S. Rep. No. 95-181, at 37-38 (1977). A mine operator should not have economic incentive to avoid a penalty by going out of business. Id. at 2752. However, a penalty reduction may be warranted on finding no evidence that an operator's decision to liquidate assets was based on the Secretary's proposed penalties. See Id. (citing Granite Mountain Crushing, 26 FMSHRC 126, 130 (Feb. 2004)). And, where an operator (and its owner(s) if an entity) conclusively does not contemplate reentry into the mining business, neither the deterrent effect, nor any other purpose of the Mine Act is served. Big Three Coal Company, 3 FMSHRC 1620 (Steffey 1981) and CRD Coal Company, Inc., 2

FMSHRC 2247 (Steffey 1980) (reducing penalties to $1.00 noting purposes of Mine Act not served where operator is no longer in business and will not resume in business).

16. Star was, at all relevant times herein, managed by Rory Williams and James W. Williams, Jr. and they owned the entities that were majority participants in the ownership of Star.[3] To resolve this litigation pursuant to the terms herein, including the penalty reductions for the Issuances against Star and the Section 110(c) charge, Rory Williams and James W. Williams, Jr. represent that they do not contemplate reentry into the mining business and have no interest in participating in the mining industry in any capacity, and further agree that they will not, directly or indirectly, actively participate in or manage the operations of, or hold a controlling interest in, any mining business or operation with an MSHA Mine ID in the United States on a permanent basis.

17. Concurrently with this settlement, Star entered into a written plea agreement with the USAO, a copy of which is attached hereto as **Exhibit B**. In summary, this agreement requires Star to enter a guilty plea to a felony pursuant to Section 10(f) of the Mine Act, 30 U.S.C. § 820(f), pay $1.333 million dollars in restitution to the families of two miners who died in the November 2013 accident, and comply with the terms of the settlement entered in these administrative proceedings.

18. The Secretary, having considered the terms of the global resolution in this matter, and the evidence relating to Star's business cessation and the Williams' agreements to refrain from future mining business or operation in the United States, and the criteria set forth in Section 110(i) of the Mine Act, has determined that the proposed penalty reductions with respect to the

[3] At all relevant times, Star was owned by Silver Star Resources, LLC ("SSR") (100% owned by the Williams'), Revenue-Virginius Mines Corporation ("RVM") (98% owned by the Williams' and the remainder 2% owned by 3 individuals), and Yankee Boy Resources, LLC ("YBR") (owned by another individual). SSR and RVM jointly owned 98% of Star.

Issuances are appropriate and the overall settlement terms and conditions promote the purpose of the Mine Act. The gravity of each violation and the operator's negligence are set forth in the body of the Issuances. The violations were abated in good faith. Information pertaining to the operator's history of previous violations and size are contained in Exhibit A to the petitions filed in these dockets. Because Star has no current assets and will not continue in business, whether the payment of assessed penalties will adversely affect its ability to continue in business is inapposite.

19. The settlement of these dockets is contingent upon and subject to the acceptance of the plea agreement (Ex. B) by the United States District Court and compliance by Star and its owners with the agreement.

20. In the event the plea agreement is not accepted by the United States District Court, the parties agree that either party may move to vacate the Court's order approving this settlement and that the opposing party will not oppose such motion.

21. Respondents and James W. Williams, Jr. are represented by counsel and have reviewed this motion and Settlement Agreement with their counsel, and they understand and are in agreement with the terms herein. Respondents and James W. Williams, Jr. take no position with regard to the positions stated in paragraphs 8 through 10 of this motion.

22. Except for proceedings under the Mine Act, nothing in this settlement agreement shall be deemed to constitute an admission by Respondents of the allegations contained within the Issuances, the Section 110(c) charge, or of any other violation of the Mine Act or any regulations or standards promulgated thereunder.

23. Within forty (40) days of the issuance of an order approving this settlement or within five (5) business days of the entry of the above-referenced criminal plea in the United

States District Court, whichever is later, payment shall be made by Respondent, to the **Office of Assessments, Mine Safety and Health Administration, P.O. Box 790390, St. Louis, MO 63179-0390.** The Assessment Control Numbers (or MSHA Case Numbers) and Docket Numbers, as set forth in the heading of this document, shall be included on the payment. The payment shall be considered to be "made," as that term is used in this paragraph, on the date payment is placed in the U.S. mail, first class postage prepaid.

WHEREFORE, the Secretary moves the Commission to approve the above settlement agreement and to order payment of the amended proposed penalties in the aggregate of $310,000 within forty (40) days of the filing of an order approving settlement or within five (5) business days of the entry of the criminal plea in the United States District Court, whichever is later.

**PLAINTIFF:**

M. Patricia Smith
Solicitor of Labor

James E. Culp
Regional Solicitor

John Rainwater
Associate Regional Solicitor

Timothy S. Williams
Counsel for Safety and Health

Tyler P. McLeod
Senior Trial Attorney
Office of the Solicitor
1244 Speer Blvd., Suite 515
Denver, CO 80204-3516
Telephone: (303) 844-1745
Facsimile: (303) 844-1753
Direct Line: (303) 844-0936

10/21/2016
Date

**RESPONDENTS:**

Rory Williams, Individually

10/21/16
Date

James W. Williams, Jr., Individually

10/21/16
Date

STAR MINE OPERATIONS, LLC

Rory Williams, Manager

10/21/16
Date

James W. Williams, Jr., Manager

10/21/16
Date

***As to form:***

Peter Gould
*Squire Patton Boggs* (US) LLP
1801 California Street, Suite 4900
Denver, Colorado 80292
Telephone: (303) 894-6176
Facsimile: (303) 894-9239

10/21/2016
Date

**CERTIFICATE OF SERVICE**

I hereby certify that on the 9th day of November, 2016, a true and accurate copy of the foregoing Joint Motion to Approve Settlement and Order Payment has been served upon the following individuals by emailing a copy thereof by first class mail, with postage prepaid, to:

Peter Gould
Squire Patton Boggs (US) LLP
1801 California Street, Suite 4900
Denver, Colorado 80292
peter.gould@squirepb.com

Tyler P. McLeod

# EXHIBIT A

**Secretary of Labor v. Star Mine Operations, LLC**

| Citation/Order | Modification to Citation/Order | Proposed Penalty | Amended Penalty |
|---|---|---|---|
| **WEST 2014-994** | | | |
| 8769616 | Penalty reduction | $51,900 | **$2,000** |
| **WEST 2014-0995** | | | |
| The docket contains 1 104(d)(1) Order. The proposed assessed penalty of **$5,000** is not amended. | | | |
| **WEST 2014-0023** | | | |
| The docket contains 92 104(a) citations. The proposed assessed penalties totaling **$25,664** are not amended. | | | |
| **WEST 2015-0024** | | | |
| 6582222 | Penalty reduction | $5,645 | **$4,000** |
| 8754780 | N/A | $4,000 | **$4,000** |
| 8754781 | N/A | $4,000 | **$4,000** |
| 8754788 | N/A | $4,000 | **$4,000** |
| 8761624 | N/A | $4,000 | **$4,000** |
| 8754779 (107(a) Order in WEST 2015-592-RM consolidated with this docket). | N/A | N/A | N/A |
| **WEST 2015-592-RM** | | | |
| 8754779 (107(a) Order) | N/A | N/A | N/A |
| **WEST 2015-0025** | | | |
| 8769605 | Penalty reduction | $112 | **$100** |

| | | | |
|---|---|---|---|
| **WEST 2015-0030** | | | |
| 8769586 | N/A | $2,000 | **$2,000** |
| 8792289 | Penalty reduction | $6,624 | **$2,000** |
| 8769600 | N/A | $2,000 | **$2,000** |
| **WEST 2015-0031** | | | |
| 8769574 | Penalty reduction | $207 | $100 |
| 8769577 | Penalty reduction | $207 | $100 |
| **WEST 2015-0037** | | | |
| This docket contains 1 104(a) citation. The proposed assessed penalty of **$100** is not amended. | | | |
| **WEST 2015-0038** | | | |
| 8769568 | N/A | $2,000 | **$2,000** |
| 8769569 | N/A | $2,000 | **$2,000** |
| 8792278 | Penalty reduction | $6,624 | **$2,000** |
| 8792275 | N/A | $2,000 | **$2,000** |
| 8792277 | Penalty reduction | $6,624 | **$2,000** |
| 8792281 | N/A | $2,000 | **$2,000** |
| 8792282 | N/A | $2,000 | **$2,000** |
| 8769588 | N/A | $2,000 | **$2,000** |
| 8756393 | N/A | $2,000 | **$2,000** |
| 8792292 | Penalty reduction | $6,624 | **$2,000** |
| 8769602 | N/A | $2,000 | **$2,000** |
| 8769603 | N/A | $2,000 | **$2,000** |
| 8757031 | Penalty reduction | $5,645 | **$2,000** |
| **WEST 2015-098** | | | |
| 8769606 | Penalty reduction | $156,300 | **$16,175** |
| 8769607 | Penalty reduction | $156,300 | **$16,175** |
| 8769608 | Penalty reduction | $156,300 | **$16,175** |
| 8769609 | Penalty reduction | $70,000 | **$7,243** |
| 8769610 | Penalty reduction | $156,300 | **$16,175** |
| 8769611 | Penalty reduction | $70,000 | **$7,243** |
| 8769613 | Penalty reduction | $156,300 | **$16,175** |
| 8769614 | Penalty reduction | $156,300 | **$16,175** |
| **WEST 2015-0127** | | | |

| | | | |
|---|---|---|---|
| 8769566 | Penalty reduction | $6,600 | **$2,000** |
| 8769567 | Penalty reduction | $7,700 | **$2,000** |
| 8769575 | Penalty reduction | $7,700 | **$2,000** |
| 8769597 | Penalty reduction | $7,700 | **$2,000** |
| 8769581 | Penalty reduction | $7,700 | **$2,000** |
| 8769582 | Penalty reduction | $7,700 | **$2,000** |
| 8769593 | Penalty reduction | $8,400 | **$2,000** |
| 8756382 | Penalty reduction | $7,700 | **$2,000** |
| 8769592 | Penalty reduction | $12,500 | **$2,000** |
| 8756392 | Penalty reduction | $9,100 | **$2,000** |
| 8792294 | Penalty reduction | $32,800 | **$2,000** |
| 8757027 | Penalty reduction | $7,700 | **$2,000** |
| 8757029 | Penalty reduction | $27,900 | **$2,000** |
| 8757030 | Penalty reduction | $27,900 | **$2,000** |
| 8757032 | Penalty reduction | $27,900 | **$2,000** |
| 8757033 | Penalty reduction | $27,900 | **$2,000** |
| **WEST 2015-128** | | | |
| 8769565 | Penalty reduction | $3,000 | **$100** |
| 8761663 | Penalty reduction | $20,000 | **$5,000** |
| **WEST 2015-304** | | | |
| 8757026 | Penalty reduction | $1,842 | **$100** |
| 8769599 | Penalty reduction | $6,624 | **$100** |
| **WEST 2015-305** | | | |
| 8756373 | Penalty reduction | $2,000 | **$2,000** |
| 8756375 | Penalty reduction | $2,000 | **$2,000** |
| 8792276 | Penalty reduction | $2,000 | **$2,000** |
| 8792279 | Penalty reduction | $6,624 | **$2,000** |
| 8792280 | Penalty reduction | $2,000 | **$2,000** |
| 8769587 | Penalty reduction | $5,645 | **$2,000** |
| 8756383 | Penalty reduction | $2,000 | **$2,000** |
| 8756385 | Penalty reduction | $2,000 | **$2,000** |
| 8792290 | Penalty reduction | $6,624 | **$2,000** |
| 8792293 | Penalty reduction | $6,624 | **$2,000** |
| **WEST 2015-306** | | | |
| This docket contains 1 104(d)(2) order. The proposed assessed penalty of **$4,000** is not amended. | | | |

| | | | |
|---|---|---|---|
| **WEST 2015-0370** | | | |
| 8756380 | Penalty reduction | $25,800 | **$2,000** |
| 8769585 | Penalty reduction | $30,200 | **$2,000** |
| **WEST 2015-0440** | | | |
| This docket contains 3 104(d)(2) orders. The proposed assessed penalties totaling **$12,000** are not amended. | | | |
| **WEST 2015-0462** | | | |
| 8769615 | Penalty reduction | $70,000 | **$2,000** |
| **WEST 2015-0547** | | | |
| 8761659 | Penalty reduction | $15,971 | **$4,000** |
| 8761660 | Penalty reduction | $15,971 | **$4,000** |
| 8761664 | Penalty reduction | $15,971 | **$100** |
| 8761665 | Penalty reduction | $15,971 | **$4,000** |
| **WEST 2015-0596** | | | |
| 8761661 | Penalty reduction | $15,971 | **$4,000** |
| **WEST 2015-0670** | | | |
| 8761657 | Penalty reduction | $125,400 | **$4,000** |
| 8761662 | Penalty reduction | $122,700 | **$4,000** |
| **WEST 2017-0093** | | | |
| 110(c) violation | N/A | $10,000 | **$10,000** |
| **Total Amended Penalties** | | | **$310,000** |